at all. Mr. Bransky, good morning. Good morning, Your Honor. Good morning, Your Honor. Good morning, Your Honors. May it please the Court, Eric Bransky on behalf of the appellants. Your Honors, before I begin, may I reserve three minutes for rebuttal? You may. Thank briefing in this case. This case has a lot of substantive issues. Some of them are novel, and there's a pretty wide breadth of facts alleged in the case. However, we think that this case turns on procedure more than anything else, and that's where I'd like to begin. We believe that the District Court's decision, as issued in our brief, did not afford my and Iqbal progeny. The Cardigan case, which was just recently decided by this Court in 2015, again assessed the issue of what notice pleading is. And notice pleading is not meant to be pleading with specificity. It is not meant to prove your prima facie case, and it is not meant to be held to an evidentiary standard. It is merely meant to give the defendants an idea of the claims that are asserted against them with some level of particularity that exceeds bare legal conclusions. And what we have in this case is a 12C motion, a judgment on the pleadings motion, and a motion to amend the complaint that were both before the District Court. And respectfully, we believe that the District Court reviewed the complaint and not only to a standard that is higher than Twombly and Iqbal, but a standard that would even exceed pleading with specificity under Rule 9B for fraud type cases. There's still a plausibility component of the new standard, which necessarily requires us to take a look at the facts pled to see if it plausibly states a claim for relief. Absolutely. And we believe that we met that both in the amended complaint and second amended complaint. And of course, you have to assess, Judge Thompson, the merits of the case when reviewing that. But the Court has said, and before we get to the merits, that you have to, when you're looking at plausibility, take a holistic approach. You need to use common sense. You still need to afford reasonable inferences to the plaintiff or to the non-moving party in this case. And you need to allow that individual to have all the benefits afforded on a Rule 12 motion. And we believe that was met here. Now, we're well aware of the fact, on the merits and on the facts, that land use cases are typically not meant to be in federal district court. 1983 cases have been held by this Court and by other courts to be particularly difficult cases. And there has to be, as Justice Breyer pointed out in the Village of Willowbrook case, the quote-unquote X factor at issue. And the run-of-the-mill land use cases, as you see, is a developer or a property owner not getting his way before a district, before a planning board or a zoning board, and then suing for First Amendment retaliation or equal protection, claiming that the animosity and the maliciousness stem from anti-development sentiments or neighboring objections and the like. This is not that case. This is a unique case. Do you have any case of this circuit that holds that those, the kind of case that you filed here is a petition for grievance? The issue of whether a real estate developer, property owner, seeking redress, petitioning the government to seek redress for grievances before a zoning or planning board seems to be an undecided issue in this jurisdiction. In this jurisdiction? In this jurisdiction. But other jurisdictions, most notably the Second Circuit right next door, have decided that issue, notably the Hampton Bay case. And that's an important issue. The reasoning the Hampton Court made and what the other courts, Sixth Circuit, Ninth Circuit, and I believe the District of Columbia, if I remember correctly, have essentially stated that the First Amendment applies to all levels of petitioning the government. It applies not only to petitioning the court and filing claims for judicial process, but it also involves petitioning administrative bodies, such as seeking an IRS refund. That's interesting because such per se rules would seem to go against Iqbal and Twombly's plausibility requirements that would depend more on the nature of the particular dispute. This dispute is one with First Amendment interests on both sides. The government has an interest in being able to speak when they have objections to a developer's plans, particularly when they're based on facts of record that have to do with possible environmental contamination of the water supply of a particular town. That happens to be the record in this case. And so we get back to the plausibility standard, whether or not some other circuit would use a label to say all development issues are subject to First Amendment petition rights. The First Circuit has never viewed it in those terms. Your Honor, I think we have to look at the two issues. The issue of whether a property owner petitioning before a zoning board or a local board of that nature, whether that within the bounds of the First Amendment, is in fact an undecided issue in this jurisdiction. But the legal issue itself has been decided in other jurisdictions. Yes, but that's what I'm questioning because broad statements of law like that are things that we tend not to do. We have been asked to review the district court's dismissal that is based on the facts that are pled and in one instance, I think, judicial notice. So I guess I'm urging you to get back to Judge Thompson's question. Yes, Your Honor. So the X factor, Judge Lynch and Judge Thompson, that makes this case different is where the animosity and maliciousness stem from. I couldn't find a case in any jurisdiction where you had a property owner outbid a governmental entity in purchasing a piece of property, which is what happened in this case, and then seek to develop that property by way of petitioning and free speech before the local entity and then have the government retaliate in such a way that it did in this case. Now, Judge Lynch, you're absolutely correct that the government certainly has a free speech right, but just as any other person who has a free speech right, that cannot be based on false reasons, maliciousness, et cetera. And what happened here The only thing that the town did was to put him through the paces. I mean, it may have been more than he had hoped to have to do in order to get his permits, but what beyond requiring him to get the extra tests have you pled here? Well, we have pled that the Water District engaged in an orchestrated campaign that ultimately resulted in the project getting denied in the first place. The rumors that were spread were false, and that's what we've pleaded. And we proved that through evidence, and we allege that in the complaint that the expert testimony that was presented before the planning board and in the Board of Health was, in fact, proof that there were no issues with nitrates or drinking water, et cetera. We pled the fact. No, no, no. You don't start at the end of the process. You start at the beginning of the process where there was a nitrate concern in this town, and it was validated with some scientific evidence. It was not unreasonable for anyone to want to put your client through the paces given this reasonable concern. So that can't be what distinguishes this case. It may be, in the end, the concerns were proven not to be true, but that doesn't mean government is not entitled to have those concerns. But when you have to draw inferences when you're looking at the Rule 12 standard, when you're looking at the complaint... Yeah, and the inferences I draw are that the water district was perfectly justified in having these concerns and actually was required to have acted on them, that you can't plead that there is no legitimacy to the concerns against the factual record in this case. Which includes the school being monitored. Well, we had the facts attached and pled in the complaint. The fact that the water district itself had produced reports, and we pled this, that demonstrated that there weren't any nitrate issues that even came close to the EPA or DEP level. We pled the fact that the water district, at the very time that they were complaining and taking this adverse action against my client, and it's much broader than we could talk about in 13 minutes of time, produced a town-wide report that said, people of Seekonk, your water is well below EPA limits, it's well below DEP limits. The water district, and we pled, is running their own cesspool closer to the well they were so concerned about than our client. The water district itself is running a septic system for their treatment plant closer to the well than our client's property. And the maliciousness, as was held in the Topalian case, which I know Judge Lynch presided over, and that was an equal protection case, the pleading standards are even further relaxed, and this circuit has helped, when that maliciousness and that animosity is there, and the X factor exists. In this case, what happened, as I stated before, is you have to read the whole complaint in context. We need to look at the entirety of the complaint. And the second amended complaint set forth with even more specificity. So I understand that the EPA's website had an article saying nitrates, high nitrates in groundwater can cause issues, but that is a factual issue. They have to have some basis for that. They can't be sending reports. The report cannot take judicial notice of an EPA report that says there is a problem with nitrates. You consider that an issue of fact which will defeat dismissal of the case? Yes or no? The EPA report, Your Honor, didn't apply to my client's project because it comes to how much level of nitrates is in the groundwater. That's an expert opinion we're asking for. There's mercury in tuna. That doesn't mean every time I go to a sushi restaurant I'm going to get sick. That's the issue that we're going beyond fact pleading. It's evidentiary. It's proof. It's a reasonable basis for stating and saying what you're saying in front of these local boards. Thank you. Thank you, Your Honors. Mr. Davis, good morning. Good morning, Your Honors. John Davis on behalf of the Seekonk Water District as well as the superintendent, Mr. Rob Bernardo, with me is my associate, Seth Barnett. This is a case in which the plaintiff alleges certain civil rights violations as a result of scrutiny given to their project within the town of Seekonk. I think my brother has mentioned that there have been a number of land use cases brought before this court in the past that have not met with a great deal of success. We maintain that this case is even less compelling than most of the cases this circuit court has rejected in the past for three reasons. Number one, the defendant's activities were exactly the same as the plaintiff's. The defendants were engaged in participation with the local boards. They were in front of the local boards. They were asked to be in front of the local boards to give their assessment, to give their input with respect to the concerns that the local boards had with respect to this particular project. Second of all, the defendants here were not the decision makers. We're not the local boards. We are a separate legal entity. But the project was being scrutinized by the Board of Health within the town of Seekonk and the planning board within the town of Seekonk, and it's before those bodies that my client appeared. And finally, Your Honor, the plaintiffs got what they asked for. My client apparently was not sufficiently persuasive to get further scrutiny of this particular project. The plaintiff got what they were looking for. So with all of those reasons, Your Honor, I would suggest that this is a far less compelling case to find that the defendants engaged in substantive due process violations, equal protection violations, or violations of the plaintiff's First Amendment rights. The record is replete with a number of facts and details concerning the plaintiff's project and the concerns, the legitimate concerns that the Seekonk Water District had. Many of those facts are set forth in materials that my opponent submitted in opposition to the defendant's motion for judgment on the pleadings. The Seekonk Water District provides water to 12,500 people within the town of Seekonk and 500 businesses. The Seekonk water comes – most of that water comes from the wellhead, the wellfield that provides about 80% to 85% of the drinking water for the town of Seekonk. The project here was proposed to be within 1,000 feet of that particular wellfield, less than a quarter of a mile. And it was conceded by plaintiffs that that was probably the closest residential development ever proposed within the town of Seekonk in proximity to those particular wellheads. The aquifer here is the sole source – and this is in the material submitted in opposition to the motion for judgment on the pleadings. The aquifer here is the sole source of water for the town of Seekonk. They don't have other sources. And in that particular case, source protection is of particular importance. This particular aquifer is highly vulnerable to contaminants. And that's set forth in the materials because of the geological – of the property, the land. There's no clay barriers, for example. So the material leached from these particular homes could very easily get into the property, could very easily get into the water supply. Both the EPA and the DEP list nitrate as an inorganic chemical contaminant. They both list it. They both limit nitrates in public drinking water. They limit it to 10 milligrams per liter or 10 parts per million. And finally, they both link – both the EPA and the DEP link nitrates in public drinking water to health risks, including the concerns for newborns that may have problems with oxygenation if they consume this while they were zero to six months old. And those are concerns that were articulated by Mr. Bernardo in front of the Board of Health and in front of the planning board. Nonetheless, the plaintiffs got what they wanted, and they brought this action against my clients. They maintain that we have violated the First Amendment rights. We have cited the Goldstein v. Galvin case, Your Honors, in which this court said that the public officials have First Amendment rights. And not only in that case did the court say that public officials have First Amendment rights, they have said that they also may have an obligation to speak out on matters of public concern. That's exactly what we have here. We have a situation where Mr. Bernardo spoke out on matters of public concern. I'm sure my brother would agree that these were matters of public concern. And he may have been, in fact, derelict in his duties if he did not. But again, this is a case even more compelling, I think, than the Goldstein case because in this case we're talking about public debate. We're talking about hearings open to the public.  Pro and con air their differences. They try to convince the body that their point of view is the correct point of view. And that's exactly what Mr. Bernardo was trying to do here. How do you address his argument about the true motive of your client's speech, that it wasn't out of concern for the drinking water, but your client was motivated because they had outbid them in acquiring the property and were angry about it? Right, right. I'm aware of the allegation with respect to motive. I think that the record appendix, page 150, actually references that the reason the water district was doing this was because they wanted to protect the property. They wanted to see it undeveloped. And that was a question made to Mr. Bernardo during one of the hearings. That's in the record. But with respect to motive, Your Honor, even the Goldstein case that said evil motive, bad faith is not the determining factor. Even with motive, the Goldstein case said, inciting the Baltimore Sun case, they said it would have to be disclosure of personal information with respect to the plaintiff, or they said it would have to be something threatening, coercive, or intimidating as to intimate that punishment, sanctions, or adverse regulatory action would imminently follow. Those are the types of, if you could show that, and there's certainly no allegations of that sort of a motive, but Goldstein said in the court in that case, said that's where you may have, you may, petitioning activity on the defense side may be problematic. We don't have that type of activity on the defense side. With respect to the equal protection claim, Your Honor, the equal protection claim, first of all, you have to have similarly situated comparators, and the plaintiffs don't have that here. Before you even get to ill will or evil motive, all they did was list in their proposed second amended complaint 10 projects that were within the town of Seekonk, and they mentioned nothing about the proximity of those projects, the size of those projects, the number of homes, whether we're talking 3 or 50, and most importantly, they don't even mention the time frame. And this court has said in the Cordy Allen case, the time frame is very important, particularly in the land use context, because policies may change over time. And in this particular case, when Mr. Bernardo said before the Board of Health and before the planning board that we're beginning to get elevated levels of nitrate in the wells that we are monitoring near that school, that can be a change of, that can evidence why there was concern, on the part of the water district at that time. And then the second part, of course, with respect to equal protection, is you have to show that there was no rational basis for treating them differently than other projects similarly situated. And as the court sees in the record, there was at least a rational basis. There's nothing wholly arbitrary about the position taken by the water district in this particular case. So they fail right there with respect to equal protection before you can even get to the question of motive. And with respect to substantive due process, Your Honor, the courts have said multiple times that with respect to substantive due process, it's going to have to be really, really bad. And you look at the facts and compare this case to some of the other cases in which the court has said that are even allowing on a motion to dismiss the dismissal of a claim with respect to substantive due process, that this case just doesn't measure up. You don't have the disparaging comments. You don't have a lot of attack, visceral attack against the plaintiffs. I mean, some of the cases the courts have said don't arise to the level of substantive due process is you have to show truly horrendous behavior, truly horrendous behavior. And certainly there are no facts alleged in this complaint to suggest that there was any truly horrendous behavior on the part of Mr. Bernardo or the Seekonk Water District with respect to this particular project. He was trying to do his job. We maintain in our papers as well, Your Honor, that even if the court thinks that the plaintiff has nudged it over to the plausible range for one of these claims, Mr. Bernardo has got to be protected by qualified immunity in this context. I mean, this is so close to the edge to suggest that the law is clearly established. It's not clearly established. And it would be hard to find a case in which any reasonable official would have known that by participating in a process at the invitation of the local body and raising concerns that are addressed in the DEP and the EPA to which they are subject violates clearly established rights of the applicant. That can't be the case. And we've also mentioned the Monell claim as well, Your Honor. So with respect to Mr. Bernardo, he would be entitled to qualified immunity. With respect to Monell, there are no allegations, either in the amended complaint or the second amended complaint, detailing that the conduct here was done pursuant to a policy, custom, or practice. And, in fact, their allegations of equal protection seem to be contrary to that. We have been singled out unfairly by the defendants in this particular case. If there are no further questions, I'll rest on my brief. Thank you. Thank you. Thank you, Your Honors. I'd like to just take one moment to address an issue raised by my brother. First of all, it was pled that the actions were coercive or designed to intimidate. The coercion at issue here was trying to coerce my client to withdraw his petition that was before the planning board and abandon his development efforts. The intimidation, et cetera, the case law is clear that, and I think it was the city of St. Louis case, that says if one government official goes around and persuades other government officials to take adverse action against somebody out of malice and in violation of their constitutional rights, then, in fact, that can constitute a constitutional rights violation. And we didn't just get what we want. My client was significantly harmed. We had to eliminate a lot. We had to fight three different appeals. And I agree with counsel's statement in one of the questions that I believe this court asked. The context of why, when, and how this happened is a perfect example that this was not just limited to Mr. Bernardo or the Seekonk Water District appearing before boards and voicing their objection. As stated in our brief, Your Honor, I wouldn't be standing here if that was the case. It went far beyond that. And you need look no further than another project called Orchard Estates, and it's detailed in our papers, that was going on at the same time as the Pine Hill Estates project. So timeline, you have my client outbidding the Water District, seeking approvals for Pine Hills. The maliciousness is there. You have this orchestrated campaign, this totally unrelated project, not near the wellheads in another area of town. All he's seeking before the Water District is a tie-in to their water line. Well, the Water District says, well, we might want to have you what's called loop the line, in other words, connect to two different locations. Well, that's a very expensive operation. Their primary concern was water pressure and fire flow. We went on for six months before that board and proved through our engineers and the Water District's engineer, as pled in our complaint, that we met the fire flow requirement. And then at the very last hearing, a few minutes before the vote, Mr. Bernardo says, well, it's not only water pressure, we're dealing with water quality issues, so we're going to force you to loop the line, and then the vote came down. And then six months later, you have another subdivision, same circumstances, called the Jacob Hill Subdivision, where the Water District allowed the line to be dead-ended and ran their own water quality test, which they purposefully, and this was pled in the complaint, purposefully did not run on our project. So right there, the animosity and the reason for that is the fact that the Water District was trying to punish my client. And behind the scenes, as attached to our motion to amend, Mr. Bernardo is sending emails saying, don't tell the people in Seekonko all the water is they're drinking. All of these questions are issues of fact, motive, intent, issues of fact. They can't be determined on a motion to dismiss. Thank you for your time this morning, Your Honors. Thank you.